**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Honorable Marcia S. Krieger**

Civil Action No. 11-cv-01028-MSK

ANDREW MARK LAMAR,

      Petitioner,

v.

ARISTEDES W. ZAVARAS, Warden, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

**OPINION ON PETITION FOR A WRIT OF HABEAS CORPUS PURSUANT TO**
**28 U.S.C. § 2254**

---

This matter comes before the Court pursuant to Mr. Lamar's (Petitioner's) Petition for a

Writ of Habeas Corpus under 28 U.S.C. § 2254 (#1).[1]  Respondents filed an Answer (#22).

Petitioner filed a Traverse (#23).  Petitioner also filed a Motion for Summary Judgment (#27)  on

October 19, 2012.  Having considered the same, along with pertinent portions of the state court

trial record (#21), the Court

      **FINDS** and **CONCLUDES** that:

**I.  Jurisdiction**

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. §§ 2254 and 1331.

---

[1]Because Petitioner appears pro se, the Court construes his filings liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  However, the Court does not serve as his advocate.  *See Hall v. Bellman*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## II.  Background[2]

In 2005, Petitioner was charged with sexual assault in violation  of Colo. Rev. Stat. § 18-3-402(1)(a).  Petitioner's trial ended in a mistrial when the jury was unable to reach a verdict. Prior to his second trial, Petitioner, against the advice of his attorney, moved to change his plea to one of not guilty by reason of insanity (NGRI).  The trial court ordered a competency evaluation.  Based on the results of the evaluation, the court found Petitioner competent. Petitioner sought to proceed *pro se*.  At the July 26, 2006 hearing, the trial court gave Petitioner an *Arguello* advisement.  Based on the advisement, and Petitioner's responses to the court's questions, the court found the waiver of his right to counsel to be knowing and intelligent and allowed him to proceed *pro se*.  The court also granted Petitioner's request for a psychological examination to assist in his decision to assert a mental health defense.

In August 2006, Petitioner expressed concern to the trial court about his decision to proceed *pro se*.  The court entered an order indicating that if Petitioner wished to revoke his waiver of counsel the court would consider the possibility of reappointing prior counsel.  A hearing was held on September 21, 2006, the court found Petitioner no longer desired to proceed *pro se* and appointed new counsel finding irreconcilable conflict with Petitioner's previous counsel.  The court noted that if a future conflict arose with new counsel and Petitioner seeks to discharge new counsel the court would presume Petitioner was implicitly waiving his right to counsel and manipulating the system.

---

[2]  The background is taken from the statement of the case in Petitioner's opening brief on direct appeal and the Colorado Court of Appeals' (CCA's) opinion.  *People v. Lamar*, No. 07CA0985 (Colo. App. Sept. 24, 2009) (unpublished); Pre-Answer Resp., App. A (#11-1) at 9.  For ease of reference, the page numbers referred to in citations to documents filed in this case are the page numbers identified by the Court's Electronic Court Filing system.

On November 22, 2006, Petitioner moved to proceed *pro se*.  A hearing was held on December 8, 2006, where the court took judicial notice of Petitioner's written and oral *Arguello* advisements given on July 26, 2006, found that Petitioner knowingly and intelligently waived his right to counsel, and granted his second motion to proceed *pro se*.  At a subsequent hearing on January 24, 2007, Petitioner and the court discussed Petitioner's mental issues, but Petitioner did not assert an affirmative defense of mental defect or request to change his plea to NGRI.

Finally, two months prior to trial at a hearing held on February 16, 2007, Petitioner moved for a continuance of his trial, which the court denied.  Petitioner then sought leave to enter an NGRI plea, which the court denied finding lack of good cause to assert the plea at that late date.  The court further found that Petitioner's change of plea request was made in response to the court's denial of a continuance and was interposed for the purpose of delay.  Petitioner then filed a motion to assert an affirmative defense of impaired mental condition.  The court denied this motion finding lack of good cause and untimely assertion.

Petitioner's second trial resulted in a conviction for sexual assault and an indeterminate sentence of thirty-five years to life.  On September 24, 2009, the CCA affirmed Petitioner's convictions but remanded the case for resentencing based on *Vensor v. People*, 151 P.3d 1274, 1275 (Colo. 2007).  *See People v. Lamar*, No. 07CA0985 (Sept. 24, 2009).  Petitioner filed a petition for rehearing that was denied.  Pre-Answer Resp., ECF #11-11, at App. K.  He also filed a petition for certiorari review that was denied on February 8, 2010.  *Id.* at ECF #11-13, App. M. On May 5, 2010, the trial court resentenced Petitioner to a term of twelve years to life in the Colorado Department of Corrections.  *Id.*, at ECF #11-15, App. O.

Petitioner commenced this action on April 18, 2011, and filed an Amended Petition on July 21, 2011. Petitioner asserted the following four claims.

    1) The trial court refused to allow an untimely NGRI plea, which impaired his ability to assert a defense violating his Fourteenth Amendment right to due process;

    2) The trial court failed to make a searching inquiry to ascertain whether he knowingly, intelligently, and voluntarily decided to represent himself;

    3) The trial court abused its discretion when it granted his motion to proceed pro se thus violating his Sixth Amendment right to conflict-free counsel; and

    4) The trial court abused its discretion when it denied his request for reassignment of counsel thus violating his Sixth Amendment right to counsel.

Respondents conceded in their Pre-Answer Response that the Petition is timely and Claims One and Two are exhausted but argued that Claims Three and Four are procedurally defaulted. In his Reply to the Pre-Answer, ECF #16, Petitioner requested that the Court either dismiss Claims Three and Four or in the alternative grant him a stay and abeyance pending exhaustion of state court remedies. The Court elected to dismiss Claims Three and Four.

Respondents now assert in the Answer that they inadvertently overlooked a ruling by the CCA that applied a procedural bar to the constitutional assertions in Claim One. They argue that Claim One should be denied because the CCA found Petitioner's due process and right to present a defense claims were procedurally defaulted. Respondents further contend that this Court may *sua sponte* raise procedural default issues when the default is obvious from the face of the petition.

"[S]tate-court procedural default . . . is an affirmative defense," and the state is "obligated to raise procedural default as a defense or lose the right to assert the defense thereafter." *See Gray v. Netherland*, 518 U.S. 152, 165-66 (1996). In the Order to File Pre-Answer Response, the Court instructed Respondents to address the affirmative defense of exhaustion of state court remedies. The Court also directed Respondents that if they did not intend to raise exhaustion as an affirmative defense they must notify the Court.

The "best procedure is to plead an affirmative defense in an answer or amended answer." *See Ahmad v. Furlong*, 435 F.3d 1196, 1202 (10th Cir. 2006) (finding defendants were not necessarily barred from raising a qualified immunity defense in their motion for summary judgment). A constructive amendment is allowed if there is no prejudice to the opposing party and the amendment is not unduly delayed, done in bad faith or with a dilatory motive. *Id.* Here, Respondents' procedural default claim clearly was presented in the Answer, and Petitioner had sufficient time to address the affirmative defense in his Reply to the Answer. There is no evidence of prejudice to Petitioner or of undue delay, bad faith, or dilatory motive by Respondents. Respondents, therefore, are not barred from raising the exhaustion affirmative defense in their Answer with respect to Claim One.

### III.  Legal Standard

In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "When a federal district court reviews a state prisoner's habeas petition pursuant to 28 U.S.C. § 2254 . . . [it] does not

review a judgment, but the lawfulness of the petitioner's custody *simpliciter*." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991) (internal quotations and citations omitted).

Because the Petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), it is governed by those provisions. *Cannon v. Mullin*, 383 F.3d 1152, 1158 (10th Cir. 2004) (citing *Rogers v. Gibson*, 173 F.3d 1278, 1282 n.1 (10th Cir. 1999)).  Under the AEDPA, a district court may only consider a habeas petition when the petitioner argues that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court, unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).  The threshold question pursuant to § 2254(d)(1) is whether Petitioner seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Id*. at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the
> facts are at least closely-related or similar to the case sub judice.  Although the
> legal rule at issue need not have had its genesis in the closely-related or similar
> factual context, the Supreme Court must have expressly extended the legal rule to
> that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of the Court's inquiry

pursuant to § 2254(d)(1).  *See id.* at 1018.  If a clearly established rule of federal law is

implicated, the Court must determine whether the state court's decision was contrary to or an

unreasonable application of that clearly established rule of federal law.  *See Williams*, 529 U.S.

at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the
> state court applies a rule that contradicts the governing law set forth in Supreme
> Court cases"; or (b) "the state court confronts a set of facts that are materially
> indistinguishable from a decision of the Supreme Court and nevertheless arrives
> at a result different from [that] precedent."  *Maynard* [*v. Boone*], 468 F.3d [665,]
> 669 [ (10th Cir. 2006) ] (internal quotation marks and brackets omitted) (quoting
> *Williams*, 529 U.S. at 405).  "The word 'contrary' is commonly understood to
> mean 'diametrically different,' 'opposite in character or nature,' or 'mutually
> opposed.' "  *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of clearly
> established federal law when it identifies the correct governing legal rule from
> Supreme Court cases, but unreasonably applies it to the facts.  *Id.* at 407-08.
> Additionally, we have recognized that an unreasonable application may occur if
> the state court either unreasonably extends, or unreasonably refuses to extend, a
> legal principle from Supreme Court precedent to a new context where it should
> apply.

*House,* 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective

one. *See Williams*, 529 U.S. at 409-10.  "[A] federal habeas court may not issue the writ simply

because that court concludes in its independent judgment that the relevant state-court decision

applied clearly established federal law erroneously or incorrectly.  Rather, that application must

also be unreasonable." *Id*. at 411.  "[A] decision is 'objectively unreasonable' when most

reasonable jurists exercising their independent judgment would conclude the state court

misapplied Supreme Court law." *Maynard*, 468 F.3d at 671.

     In addition,

> evaluating whether a rule application was unreasonable requires
> considering the rule's specificity.  The more general the rule, the
> more leeway courts have in reaching outcomes in case-by-case
> determinations.  It is not an unreasonable application of clearly
> established Federal law for a state court to decline to apply a
> specific legal rule that has not been squarely established by [the
> Supreme] Court.

*Harrington v. Richter*, 131 S. Ct. 770, 786,  --- U.S. --- (Jan. 19, 2011) (internal quotation marks

and citation omitted).  The Court "must determine what arguments or theories supported or . . .

could have supported[ ] the state court's decision" and then "ask whether it is possible

fairminded jurists could disagree that those arguments or theories are inconsistent with the

holding in a prior decision of [the Supreme] Court." *Id*.  "Even a strong case for relief does not

mean the state court's contrary conclusion was unreasonable." *Id.* (citation omitted).  "Section

2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state

criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.*

(citation omitted).

     Under this standard, "only the most serious misapplications of Supreme Court precedent

will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671.  Furthermore,

> [a]s a condition for obtaining habeas corpus relief from a federal
> court, a state prisoner must show that the state court's ruling on the
> claim being presented in federal court was so lacking in
> justification that there was an error well understood and

comprehended in existing law beyond any possibility for
fairminded disagreement.

*Richter*, 131 S. Ct. at 786-87.

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2).  *See Romano v.
Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002).  Section 2254(d)(2) allows a court to grant a
writ of habeas corpus only if the state court decision was based on an unreasonable
determination of the facts in light of the evidence presented.  Pursuant to § 2254(e)(1), the Court
must presume that the state court's factual determinations are correct and Petitioner bears the
burden of rebutting the presumption by clear and convincing evidence.  "The standard is
demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.' "
*Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340
(2003)).

A claim, however, may be adjudicated on the merits in state court even in the absence of
a statement of reasons by the state court for rejecting the claim.  *Richter*, 131 S. Ct. at 784.
("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual
conclusion does not require that there be an opinion from the state court explaining the state
court's reasoning").  Furthermore, "[w]hen a federal claim has been presented to a state court
and the state court has denied relief, it may be presumed that the state court adjudicated the claim
on the merits in the absence of any indication or state-law procedural principles to the contrary."
*Id.* at 784-85.  Even "[w]here a state court's decision is unaccompanied by an explanation, the
habeas petitioner's burden still must be met by showing there was no reasonable basis for the
state court to deny relief."  *Id.* at 784.

In other words, the Court "owe[s] deference to the state court's result, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, the Court "must uphold the state court's summary decision unless [the court's] independent review of the record and pertinent federal law persuades [it] that [the] result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id*. at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id.* Likewise, the Court applies the AEDPA deferential standard of review when a state court adjudicates a federal issue relying solely on a state standard that is at least as favorable to the petitioner as the federal standard. *See Harris v. Poppell*, 411 F.3d 1189, 1196 (10th Cir. 2005). If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, the Court must review the claim *de novo* and the deferential standards of § 2254(d) do not apply. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

## IV. Analysis

### 1. Claim One

In his first claim, Petitioner asserts that the trial court denied him the opportunity to present an NGRI defense in violation of his federal due process rights. Petitioner contends that subsequent to his mistrial he attempted to obtain a psychological assessment on six separate occasions to assist in formulating an NGRI plea, but the court either referred the issue to counsel or rejected the plea and instead, over Petitioner's objections, ordered a competency evaluation. Pet. at 6.

### A. Procedural Default

10

As stated above, Respondents contend that this claim is procedurally defaulted because the CCA declined to address any of Petitioner's constitutional claims, which were raised for the first time on appeal.

The Court has reviewed the CCA's opinion and with close scrutiny the hearing transcripts and the many motions Petitioner filed during the second trial proceeding. In addressing Petitioner's NGRI and impaired mental condition pleas, the CCA found as follows:

### II. NGRI and Impaired Mental Condition Pleas

Defendant first argues that the trial court abused its discretion by denying his February 2007 requests to plead NGRI and the affirmative defense of impaired mental condition, based on the court's finding of a lack of good cause. We perceive no abuse of discretion.

Under [§] 16-8-103(1.5)(a), C.R.S. 2009, "[t]he defense of insanity may only be raised by a specific plea entered at the time of arraignment; except that the court, for good cause shown, may permit the plea to be entered at any time prior to trial." Because insanity, by definition, now includes what was previously known as "impaired mental condition," § 16-8-101.5, C.R.S. 2009, the timing and good cause requirements apply both to the NGRI and to the affirmative defense of impaired mental condition that defendant sought to assert.

"[G]ood cause is shown when it is demonstrated that fairness and justice are best subserved by permitting the additional plea. [This standard] is satisfied if the petitioner established that the plea was not entered at the time of arraignment due to 'mistake, ignorance, or inadvertance." *Ellis v. District Court*, 189 Colo. 123, 125, 538 P.2d 107, 108 (1975) (citations omitted).

Here, as noted above, the trial court concluded that defendant failed to establish good cause to support his belated requests to enter pleas of NGRI and impaired mental condition, finding that defendant's requests were interposed for the purpose of delay. The facts set forth above amply support these findings. In particular, defendant had previously raised the issue of an NGRI plea many months before and clarified that he did not desire to enter such a plea. He likewise raised the possibility of an "impaired mental condition" defense for many months. It was not until the trial court denied the last of a number of requested continuances, this one as defendant's second trial approached, that defendant again raised these issues. In these circumstances, we perceive no abuse

11

of discretion in the trial court's refusal to allow defendant to change his plea to NGRI or to assert an affirmative defense of impaired mental condition.

*Lamar*, No. 07CA0985 at 7-9.  The CCA also found that

> [i]n addition, defendant raised a myriad of constitutional claims throughout his opening and reply briefs.  Defendant never raised these claims in the trial court, and he presents them on appeal in conclusory fashion with neither factual nor legal support.  Accordingly, we will not consider them here.  *Hinojos-Mendoza v. People*, 169 P.3d 662, 667 (Colo. 2007) (generally, a reviewing court will not consider constitutional issues raised for the first time on appeal); *People v. Czemerynski*, 786 P.2d 1100, 1107 (Colo. 1990) (refusing to consider issues raised for the first time in the defendant's reply brief); *People v. Deifenderfer*, 784 P.2d 741, 752 (Colo. 1989) (counsel for appealing party has a duty to inform the court of the specific errors relied on and the grounds, supporting facts, and authorities therefor).

*Id.* at 18-19.

The Court further notes the CCA's reference to a "myriad of constitutional claims" does not identify each of the claims that the CCA refused to address.

A review of Petitioner's notice of intent to assert a impaired mental condition defense, filed with the trial court on March 1, 2007, includes a due process argument based on *Hendershott v. People*, 653 P.2d 385 (Colo. 1982), that he has a right to present reliable and relevant evidence of a mental condition to contest the mental culpability requirement.  *People v. Lamar*, 05CR467, CD Lamar File at 416.  In the opening brief before the CCA, Petitioner again asserted a right to present relevant and competent evidence as a defense to a criminal charge based on *Hendershott*.  Pet., ECF #11-1, at 35.  Petitioner contended that the prohibition of an NGRI plea potentially withheld relevant evidence from the jury and as a result the prosecution did not have to meet the required burden of proof.  *Id.*

A fair presentation of claims need not "invoke talismanic language," *Nichols v. Sullivan*, 867 F.2d 1250, 1252 (10th Cir.1989), or "cite 'book and verse on the federal constitution,' " but

12

it must raise the " 'substance' of the federal claim in state court," *Bland v. Sirmons,* 459 F.3d 999, 1011 (10th Cir. 2006) (quoting *Picard v. Connor,* 404 U.S. 270, 278 (1971)).  In other words, state courts must be "alerted to the fact that the prisoner[ ][is] asserting claims under the United States Constitution.  *Duncan v. Henry,* 513 U.S. 364, 365-66 (1995).

As stated above, Petitioner relied on *Hendershott* for his claim that he has a right to present reliable and relevant evidence of a mental condition to contest the mental culpability requirement.  In *Hendershott,* the Colorado Supreme Court found that the trial court's exclusion of mental impairment evidence was an error of a federal constitutional dimension.  *Id.*

There is sufficient evidence for finding Petitioner exhausted his due process argument in Claim One with respect to his NGRI defense claim.  It also is clear that the CCA did not address this claim in their opinion disposing of Petitioner's direct appeal.  Because Claim One was not adjudicated on the merits in state court, and the claim also is not procedurally barred, the Court will review the claim *de novo* and the deferential standards of § 2254(d) do not apply.  *Gipson*, 376 F.3d at 1196.

**B.  Merits**

It is well-settled that a defendant has a due process right not to be tried while incompetent.  *Drope v. Missouri,* 420 U.S. 162, 171–72 (1975); *Pate v. Robinson,* 383 U.S. 375, 385 (1966).  A defendant is competent to stand trial when he has a "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and he possesses a "rational as well as factual understanding of the proceedings against him."  *Dusky v. United States,* 362 U.S. 402 (1960).  The Supreme Court has identified several factors to be considered when assessing a defendant's competency to stand trial, including attorney representations, prior

medical opinions regarding the defendant's mental competence to stand trial, evidence of the

defendant's prior irrational behavior, and the defendant's demeanor at trial. *Drope,* 420 U.S. at

177 n.13, 180.  However, "[e]ven when a defendant is competent at the commencement of his

trial, a trial court must always be alert to circumstances suggesting a change" in his competency.

*Id.* at 181.  Consequently, in order to satisfy the requirements of due process, a trial court must

*sua sponte* conduct a competency hearing when there is a reason to doubt the defendant's

competency and the evidence is sufficient to put the trial court on notice of a potential

competency problem.  *Pate,* 383 U.S. at 385.

Petitioner does not disagree that prior to the onset of the second trial the court ordered a

competence evaluation when he first sought an NGRI plea against the advice of his attorney.

Petitioner also does not challenge the evaluation results that he is competent.  *See* July 18, 2006

Hr'g (CD Lamar Tr., #9).  The Court has reviewed all hearing transcripts and read with great

scrutiny Petitioner's statements made during these hearings.  Nothing demonstrates the

competence finding was incorrect.  In fact, Petitioner conceded that competence was not an issue

on February 22, 2007, when the district court heard argument on Petitioner's motion to enter an

untimely NGRI plea.  *See* Feb. 22, 2007 Hr'g (CD Lamar Tr., #22 at 4).  The trial court also

found that Petitioner was able to proceed *pro se*, even though Petitioner sought reappointment of

counsel at a later time.  *See* July 26, 2012 Hr'g (CD Lamar Tr.,  #26 at 43).  The Court,

therefore, finds Petitioner was competent during all pretrial proceedings and now will review the

merits of Petitioner's NGRI claim.

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment . . . ,

the Constitution guarantees criminal defendants a meaningful opportunity to present a complete

defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (internal quotation marks omitted).

"The right of an accused in a criminal trial to due process is, in essence, the right to a fair

opportunity to defend against the State's accusations." *Chambers v. Mississippi*, 410 U.S. 284,

294 (1973).

A competent defendant has the "ultimate authority to make certain fundamental decisions

regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or

take an appeal." *Jones v. Barnes,* 463 U.S. 745, 751 (1983). *Frendak v. United States*, 408 A.2d

364 (D.C. Ct. App. 1979) (Philosophy of *North Carolina v. Alford*, 400 U.S. 25 (1970), and

*Faretta v. California*, 422 U.S. 806 (1975), supports finding an insanity defense as a

fundamental decision.)  Because these rights are constitutionally guaranteed personal rights of

the defendant, they can only be waived by the defendant in a knowing and voluntary manner.  In

contrast, deciding what arguments to pursue and the defenses to develop are viewed as tactical

and strategic issues which defense counsel has the ultimate authority to decide. *Wainwright v.

Sykes,* 433 U.S. 72, 93 & n.1 (1977) (Burger, C.J., concurring).

The trial court recognized Petitioner had a fundamental right to decide whether to enter

an NGRI plea.  *See* July 26, 2006 Hr'g (CD Lamar Tr., #26 at 37).  The United States Supreme

Court, however, has not said that the Constitution requires the States to recognize the insanity

defense.  *See Medina v. California*, 505 U.S. 437, 449 (1992) (citing *Powell v. Texas*, 392 U.S.

514, 536-37 (1968).  The Court, nonetheless, reviews Petitioner's claim based on the state

court's determination that he had a fundamental right to decide whether to enter an NGRI

defense.

15

Throughout the first and second trial, Petitioner contended he had a history of mental health issues, including delusional paranoia, bi-polar disorder, schizophrenia, and excessive compulsive issues. CD Lamar File at 240-41; Oct. 12, 2005 Hr'g (CD Lamar Tr., #29 at 13 and 40). Petitioner's attorney in his first trial agreed that Petitioner had mental health issues based on interactions with Petitioner and records from previous criminal proceedings. *Id.* at #29. Petitioner, however, did not seek an NGRI plea in his first trial, Nov. 9, 2005 Hr'g (CD Lamar Tr., #27), and prior to the first trial commencing, the trial court determined that the disagreement between Petitioner and his counsel was due to a strategy issue, that Petitioner was competent, and there was not an irreconcilable conflict between Petitioner and counsel. *Id.*

After the first trial ended without a unanimous verdict, a new trial was set for January 17, 2006. The trial was continued for ninety days when Petitioner alleged an irreconcilable conflict with counsel and new counsel was appointed. Jan. 9, 2006 Hr'g (CD Lamar Tr., #23). Just prior to the April 25, 2006 hearing, and without counsel's knowledge, Petitioner submitted a request for a psychological evaluation. *See* Apr. 25, 2006 Hr'g (CD Lamar Tr., #4). At a hearing on May 8, Petitioner announced his desire to enter an NGRI plea, contrary to counsel's advice, which prompted the trial court to schedule a competence evaluation. *See* May 8, 2006 Hr'g (CD Lamar Tr., #5). Petitioner again requested that his counsel withdraw, but the trial court would not rule on the request until the competence evaluation was complete. *Id.*

Once Petitioner was deemed competent, the trial court addressed the removal of counsel request and the NGRI plea. The trial court found no reason for removal of counsel and appointment of new counsel based only on a disagreement between counsel and Petitioner as to whether a NGRI plea should be entered. *See* July 18, 2006 Hr'g (CD Lamar Tr., #9). However,

16

when the trial court asked Petitioner if he wanted to proceed with an NGRI plea, he refused to do so and explained he would not enter the plea because his request for removal of counsel and appointment of new counsel was denied. *Id.* The trial court gave Petitioner written copies of the advisements the court used for defendants who chose to enter an NGRI plea or proceed *pro se* in order to allow the Petitioner an opportunity to review the advisements before the next scheduled hearing. *Id.* At the July 26, 2006 hearing, the court gave a complete oral advisement to the Petitioner regarding self-representation. The Petitioner then stated that he needed to proceed *pro se* because there are issues that neither his first nor second counsel would explore. *See* July 26, 2006 Hr'g (CD Lamar Tr., #26). The court granted Petitioner leave to proceed *pro se*.

It is clear from the hearing transcript Petitioner understood that even if he entered an NGRI plea, he could still decide to proceed with a different defense after an evaluation was conducted. *Id.* Petitioner chose not to enter the NGRI plea but instead requested a confidential psychological evaluation to assist him with his defense. *Id.* Petitioner further was informed that the evaluation would not remain confidential if he sought to use the results of the evaluation to support a mental health defense. *Id.* The court also instructed Petitioner that regardless of whether he decided to proceed with the NGRI plea or a mental health defense a court-funded evaluation then would be obtained. *Id.*

At the September 5, 2006 hearing, Petitioner indicated some remorse for his decision to proceed *pro se*. *See* Sept. 5, 2006 Hr'g (CD Lamar Tr., #10). He apologized for his lack of a "reciprocal" relationship with the second appointed counsel. *Id.* at 21. The trial court assisted Petitioner in obtaining requested transcripts and files and advised him to have advisory counsel.

17

*Id.* The trial court explained to Petitioner that legal issues are complex, attorneys are the experts, and trying to coordinate discovery efforts from the jail is difficult. *Id.* The Petitioner agreed. *Id.*

Subsequently, the trial court revisited the irreconcilable conflict issue and determined that an in camera hearing should be conducted by another judge. *See* Sept. 21, 2006 Hr'g (CD Lamar Tr., #11). As a result, Petitioner's *pro se* status was withdrawn, a irreconcilable conflict was found between Petitioner and his second attorney, and a new alternate defense counsel was appointed. *See* CD Lamar File at 296-97. The judge who conducted the in camera hearing found that, although Petitioner did not waive counsel previously and was not trying to manipulate the system at this time, if a future conflict arose with the newly appointed counsel, and Petitioner sought to discharge the counsel, there would be a presumption of waiver of counsel and a finding of manipulating the system. *Id.*

Petitioner's third counsel entered his appearance at the October 12, 2006 hearing, *see* Oct. 12, 2006 Hr'g (CD Lamar Tr., #13). At the November 15, 2006 hearing, a new trial date was set following Petitioner's waiver of speedy trial rights. *see* Nov. 15, 2006 Hr'g (CD Lamar Tr., #14). Within the first month of his third counsel's appointment, Petitioner again requested that his counsel withdraw and that he be allowed to proceed *pro se*. *See* Dec. 8, 2006 Hr'g (CD Lamar Tr., #16). The trial court granted the Petitioner's request after discussing the possibility of advisory counsel and other issues concerning Petitioner's ability to proceed on his own.

Advisory counsel was appointed by the trial court at a motions hearing held on January 24, 2007 hearing. *See* Jan. 24, 2007 Hr'g (CD Lamar Tr., #1). Similar to what took place during each prior hearing, the court reviewed specifically all requests by Petitioner and made a list of outstanding discovery and transcript issues for Petitioner. *Id.* Petitioner requested transcripts of

18

different proceedings that the court determined did not relate to the trial. *Id.* The court stated that the transcripts would be provided, but also indicated that no delay in the trial was necessary. *Id.* Petitioner also was instructed that this hearing was set to determine any pre-motion issues and any new motions filed would have to demonstrate why they could not have been filed earlier. *Id.* at 19-20.

At this hearing, Petitioner stated that he intended to file a motion to reinstate his third appointed counsel. *Id.* Petitioner contended that the removal of counsel was the court's fault for not inquiring into the reason for the conflict with counsel and as a result his right to a speedy trial was violated. *Id.* Petitioner further indicated that he intended to challenge the trial court's previous statement that *pro se* litigants usually lose at trial. *Id.* at 9. Finally, Petitioner indicated that he may explore an affirmative defense of mental defect, but although his third appointed counsel terminated the confidential psychological evaluation he was not asking the court to order a new evaluation. *Id.* at 28.

Before the February 16 hearing, the Petitioner filed several letters (one, written only 5 days after advisory counsel was appointed) stating that the Petition had a major conflict with advisory counsel. *Id.* at 5. At the February 16, 2007 hearing, Petitioner asked that advisory counsel be discharged because he had tried to sabotage the case. *See* Feb. 16, 2007 Hr'g (CD Lamar Tr., #21). The trial court told Petitioner she was "tapped out in terms of resources for appointment at this time" but that the offer for advisory counsel would remain open. *Id.* at 4. At the end of the hearing, after the discussion of pending motions concluded and the court set a trial date, Petitioner tendered a motion to continue the trial date. *Id.* at 69. When the trial court denied the motion, Petitioner moved for leave to plead not guilty by reason of insanity. *Id.* at 70.

19

Petitioner argued that his state of mind had always been at issue, that his third attorney terminated the psychological evaluation without his consent, and that he needed the time to consult with a doctor to determine whether he should go forward with an NGRI plea. *Id.* at 71.

On February 22, 2007, the trial court heard Petitioner's argument for untimely assertion of an NGRI plea. Feb. 22, 2007 Hr'g (CD Lamar Tr., #22). The trial court entered an order denying the request for lack of good cause. CD Lamar File at 409-10. The trial court found that despite numerous court appearances after his first attempt to enter an NGRI plea in April 2006, Petitioner did not renew his request to plea NGRI until the February 16, 2007 hearing and in direct response to the court's denial of his motion for a continuance of trial. CD Lamar File at 410.

The timing of entry of the NGRI plea is governed by Colo. Rev. Stat. § 16-8-107(3)(b). It provides that notice of an intent to enter a plea of not guilty by reason of insanity "shall be given at the time of arraignment; except that the court, for good cause shown, shall permit the defendant to inform the court and prosecution of the intent to introduce such evidence at any time prior to trial."

This requirement appears to be consonant with federal law. In *Williams v. Florida*, the United States Supreme Court appeared to confirm the validity of pretrial notice statutes. *See Williams v. Florida*, 399 U.S. 78 (1970) (addressed the notice of alibi witnesses). Subsequently, the Supreme Court found that a defendant must "comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence," *Chambers,* 410 U.S. at 302, and a state's interests may be heightened by a defendant's failure to meet the notice requirements of a statute, *see Michigan v. Lucas,* 500 U.S.

145, 153 (1991) ("Failure to comply with [the notice] requirement may in some cases justify even the severe sanction of preclusion."). The Due Process Clause is violated only if the exclusion of the evidence violated a fundamental principle of justice. *Patterson v. New York*, 432 U.S. 197, 201-02 (1977).

In *Taylor v. Illinois*, the Supreme Court affirmed the trial court's exclusion of a witness whose name did not surface until the second day of trial. *See Taylor v. Illinois*, 484 U.S. 400, 403-05 (1988) (defense counsel admitted aware of witness prior to trial and court found the violation of discovery willful). Furthermore, in *Williams*, the Court stated:

> The adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played. We find ample room in that system, at least as far as "due process" is concerned, for the instant Florida rule, which is designed to enhance the search for truth in the criminal trial by insuring both the defendant and the State ample opportunity to investigate certain facts crucial to the determination of guilt or innocence.

*Williams*, 399 U.S. at 82.

The Tenth Circuit also has determined that the exclusion of testimony as a sanction for violation of procedural rules does not violate the Due Process Clause. *United States v. Pearson*, 159 F.3d 480, 483-84 (10th Cir. 1998) (upholding the exclusion of an alibi witness that defense counsel failed to disclose pursuant to Fed. R. Crim. P. 12.1(a), despite the fact that defendant's attorney acted diligently in informing the Government as soon as defendant made him aware of the testimony); *United States v. Bautista,* 145 F.3d 1140, 1151-52 (10th Cir.), *cert. denied,* 525 U.S. 911 (1998) ("[T]he right to present defense witnesses is not absolute. A defendant must abide by the rules of evidence and procedure."); *Richmond v. Embry,* 122 F.3d 866, 871-72 (10th Cir. 1997) *cert. denied,* 522 U.S. 1122 (1998) (noting that the state trial court properly excluded

evidence of a victim's prior sexual activity because the defendant did not follow the procedures set out in the state's rape shield law); *United States v. Russell,* 109 F.3d 1503, 1509-12 (10th Cir. 1997) (affirming the district court's refusal to grant a continuance to allow the Government to re-interview witnesses that the court excluded as a sanction for defense counsel's violation of a mutual witness disclosure agreement); *see also Tyson v. Trigg,* 50 F.3d 436, 444-47 (7th Cir. 1995) (balancing the high level of surprise and prejudice to the prosecution against the low materiality of the testimony to exclude witnesses who were disclosed late in violation of a discovery order-even though the delay was not willful).

Even recognizing that the Court in *Chambers*, and in other supreme court cases, did not squarely address affirmative defenses, it cannot be said that the state trial court unreasonably applied clearly established federal law.  *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008). Relief, therefore, is not available for the following reasons.

In support of his good cause argument, Petitioner argued that his mental condition was always at issue, his third appointed attorney discontinued the psychological evaluation, and  it was not unreasonable to enter an NGRI plea two months prior to trial. Under Colorado law, determining whether good cause exists "naturally depends on the particular facts of each case and should be made after assessing the totality of the circumstances." *People v. Baker,* 104 P.3d 893,  896 (Colo. 2005).  Nonexclusive factors include "1) the potential prejudice the People may suffer from late filing, 2) the interests of judicial economy, and 3) the propriety of requiring the defendant to pursue other remedies."  *Id.* at 896–97 (citing *Estep v. People,* 753 P.2d 1241, 1248 (Colo. 1988)).

22

The Supreme Court has directed that in determining what constitutes excusable neglect, a court must "tak[e] account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership,* 507 U.S. 380, 395 (1993).  The Court has pointed to four factors that are relevant in determining whether to find excusable neglect: 1) the danger of unfair prejudice to the nonmoving party; 2) the length of the delay and its potential impact on judicial proceedings; 3) the reason for the delay, including whether it was within the reasonable control of the movant; and 4) whether the movant acted in good faith.  *Id.; see City of Chanute v. Williams Natural Gas Co.,* 31 F.3d 1041, 1046 (10th Cir. 1994).  A defendant has the burden of establishing sufficient reason for the failure to comply with the filing requirements.  *See United States v. Lucas,* 597 F.2d 243, 245 (10th Cir. 1979).

To assess the constitutionality of any preclusion sanction, acting with bad faith is an "important factor but not a prerequisite to an exclusion."  *Short v. Sirmons*, 472 F.3d 1177, 1188-89 (10th Cir.  2006) (citing *United States v. Johnson*, 970 F.2d 907,  911 (D.C. Cir. 1992)) (citations omitted).  Petitioner also must show his trial was fundamentally unfair if he is to establish a violation of his compulsory process, fair trial, or due process rights:  " '[i]n order to declare a denial of [fundamental fairness] [a court] must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.' " *Richmond v. Embry,* 122 F.3d 866, 872 (10th Cir. 1997)  (quoting *United States v. Valenzuela-Bernal,* 458 U.S. 858,  872 (1982) (further quotation omitted).

Viewing the trial court's entire pre-trial colloquy with Petitioner, the Court is persuaded that the trial court did not mechanistically apply § 16-8-107(3)(b) in rejecting Petitioner's NGRI plea as untimely.  Petitioner had sufficient time to present an NGRI defense prior to the February

22 hearing.  His first recorded attempt to raise an NGRI defense was on May 8, 2006.  Indeed, after finding him competent, the trial court afforded Petitioner a psychological evaluation to assist in his decision to proceed with the NGRI defense. The evaluation took place during September 2006 and feedback was given to Petitioner's third appointed counsel on October 17, 2006.  CD Lamar File at unnumbered page inserted before page 479.  The Petitioner discontinued the evaluation after he became aware of the doctor's conclusions[3] , and clearly was aware of the conclusions on November 22, 2006, when he sought to discharge his third appointed counsel.  CD Lamar File at 301-02.   At no time did the Petitioner request a new psychologist or a new evaluation.  The Petitioner never sought to renew his request to assert a NGRI or mental impairment plea at any time after May 8, 2006 until his motion to continue the trial was denied..

---

[3]  According to the Petitioner, the evaluator told him that his sanity was not in question. Feb. 22, 2007 Hr'g (CD Lamar Tr., #22 at 11).

At all times, the Petitioner was fully advised by the trial court[4], and he was assisted by four different attorneys. He had previously had a trial, and in retrospect, it appears that the Petitioner used various strategies to delay his trial, of which a request to change the nature of his plea was only one. Under these circumstances, the Petitioner was not deprived of constitutionally adequate assistance of counsel, adequate constitutional advisements by the trial court or due process.

---

[4] Petitioner was well informed regarding the conditions of an NGRI or mental impairment defense. During the July 18, 2006 hearing, the trial court gave the written advisement on the NGRI plea to Petitioner so he could review the terms for entering the plea. The Court also notes that during the July 18 hearing when Petitioner was asked to enter the plea he was reluctant to do so, and only when the Court offered the written advisement and deferred the advisements to a later hearing did Petitioner state that "I wish not to defer this, you know. I would like to enter not guilty by reason of insanity pleas . . . ." July 18, 2006 Hr'g (CD Lamar Tr., #9 at 21). At the July 26, 2006 hearing, both the trial court and the prosecution informed Petitioner that he could enter the NGRI plea, the court would accept the plea and order an evaluation, and then Petitioner could decide what defense to present. July 26, 2006 Hr'g (CD Lamar Tr., #26 at 38-39). Petitioner also was informed that a *pro se* litigant can enter an NGRI plea. *Id.* at 39-40. Nonetheless, Petitioner opted not to enter an NGRI plea, but instead sought the psychological evaluation, which was granted. *Id.* at 62. Petitioner also indicated at this time that the evaluation would only be for the purpose of determining if there is an adult mental impaired dysfunction. *Id.* at 63. Petitioner further was put on notice by the prosecution that if he intended on using any of the mental health evidence he must comply with the requirements of the insanity plea, even if the evidence is not offered pursuant to an insanity defense, and the evaluation will not remain confidential. *Id.* at 66. Petitioner also was informed that if he decided to use a mental impairment or insanity defense a court-appointed evaluation would be done. *Id.* at 67. From the July 26, 2006 hearing, until the February 16, 2007 hearing, Petitioner did not request to enter either a mental impairment defense or an insanity defense. At the January 24, 2007 hearing, he only alluded to possibly raising a mental defect defense but did not do so. Jan. 24, 2007 Hr'g (CD Lamar Tr., #1 at 28-30).

The trial court had a heightened interest in proceeding to a trial[5] on charges against the Petitioner.  *See Lucas*, 500 U.S. at 153.  The Petitioner's second trial  was first scheduled for January 16,  2006, but due to the Petitioner's various motions and requests did not occur until April 23, 2007.  Each of the continuances were based either on Petitioner's disagreement with counsel or dissatisfaction with proceeding *pro se*.  The trial court was more than accommodating to Petitioner in all of his requests, including appointment of counsel and advisory counsel, provision of transcripts, legal access at the jail, and identifying an investigator.  A review of the hearing transcripts indicates that many of Petitioner's requests were redundant and had the implication of delaying the pretrial process.  Finally, Petitioner's claim that an evaluation could be completed prior to the trial date was highly speculative given the history of the fifteen-month delay.

The Court, therefore, finds that Petitioner's untimely request to enter an NGRI plea was an attempt to delay his trial, was not supported by good faith, and that the trial court was justified in finding an absence of good cause.  Accordingly, the CCA's denial of Petitioner's NGRI claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Claim One lacks merit and will be dismissed.

_____

[5]  "Finality is not solely an interest of the parties to a criminal case.  It also serves societal interests and the interests of judicial administration by minimizing uncertainty and waste of judicial resources caused by undue delay."  *United States v. Mitchell*, 518 F.3d 740, 750 (10th Cir. 2008) (citing *Day v. McDonough*, 547 U.S. 198, 208 (2006) (pointing to the finality of judgment as an important judicial value).

## 2.  Claim Two

In his second claim, Petitioner asserts that the trial court failed to adequately ascertain that he knowingly, intelligently, and voluntarily decided to represent himself when he asked that his third counsel withdraw.  Am. Pet., ECF #12, at 3.  Petitioner contends that the trial court failed to give him a proper advisement.  In his Reply, Petitioner contends that had the "court read his motion to proceed *pro se*, thereby disclosing the involuntary aspect to which a conflict inheres, such waiver could not have been valid."  Reply at 16.  He also contends that because the "state courts' decisions and opinion are silent, save the trial court's later attempt to re-appoint [his third appointed counsel] whom declined due to the conflict, they are based on an unreasonable determination of the facts."  *Id.*  Petitioner further asserts in the Reply that

> the trial court failed to make an indulgence against the putative waiver, as is clearly established, where it was more than evident as to the ultimate facts that necessitated the waiver, vis-a-vis exploring a defense by a special plea, was involuntarily compelled due to the conflict.  And, by this later admission that the trial court was absent-minded as to the nature of the waiver is a clear and convincing showing that the factual determinations were made unreasonable in light of the historical facts, aforementioned.  Furthermore, the CCA's opinion is devoid of this critical factor.

*Id.*

Regarding Petitioner's waiver of representation, the CCA found as follows:

### III.  Waiver of Right to Counsel

Defendant next claims that the trial court failed to ascertain that he knowingly, intelligently, and voluntarily decided to represent himself following his second motion to proceed pro se.  Specifically, defendant appears to assert that although he received a proper *Arguello* advisement when he initially sought to proceed pro se, the trial court erred by failing to repeat the entire *Arguello* advisement several months later, when defendant again requested, and was granted, leave to proceed pro se.  We are not persuaded.

27

A waiver of the right to counsel presents a mixed question of law and fact that we review de novo. *People v. Smith*, 77 P.3d 751, 757 (Colo. App. 2003). "A trial court's determination that a defendant waived the constitutional right to counsel will be upheld if the record affirmatively establishes that the defendant knowingly and intelligently waived that right." *Arguello*, 772 P.2d at 93.  In *Arguello*, our supreme court suggested a specific colloquy to be conducted between the trial court and a defendant to ensure a voluntary, knowing, and intelligent waiver of the right to counsel, and the court set forth a proposed colloquy in an appendix for guidance. *Id.* at 95-96.  A court's failure to comply substantially with this requirement, however, does not automatically render the waiver invalid. *Id.* at 96.  Rather, "in rare circumstances, a defendant's waiver of the right to counsel may be valid without use of the proposed colloquy, but in that event, a reviewing court must consider the advisement and the totality of the circumstances in the record as a whole." *Smith*, 77 P.3d at 757.  Before a reviewing court can find a valid implied waiver based on conduct, however, "there must be ample, unequivocal evidence in the record that the defendant was advised properly in advance of the consequences of his actions." *Arguello*, 772 P.2d at 97-98.

Here, when defendant filed his second request to proceed pro se, the trial court reminded him of the lengthy written and oral advisement that it had given in July 2006.  In addition, the court confirmed that defendant recalled those advisements, still understood the risks inherent in self-representation, and nonetheless wished to represent himself.  In these circumstances, considering the totality of circumstances in the whole record, we conclude that defendant intelligently, knowingly, and voluntarily waived his right to counsel after he renewed, and the trial court granted, his request to represent himself.  Although, as noted above, defendant suggests that the trial court was required to repeat the entire *Arguello* advisement in December 2006, he cites no authority in support of that position, and we are aware of none.

*Lamar*, No. 07CA0985 at 9-11.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  The right to counsel includes not only the right to retain counsel, but also the right of an indigent defendant to have counsel appointed for him at state expense. *Gideon v. Wainwright*, 372 U.S. 335 (1963).

A defendant in a criminal proceeding also has a constitutional right to waive his right to counsel and to represent himself.  *Faretta v. California*, 422 U.S. 806, 817 (1975).  In order to be effective, a waiver of counsel must be knowing, voluntary, and intelligent.  *See Iowa v. Tovar*, 541 U.S. 77, 88 (2004).  Whether a waiver is knowing, voluntary, and intelligent "depends in each case upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."  *Edwards v. Arizona*, 451 U.S. 477, 482 (1981) (internal quotation marks omitted).  In the context of a criminal proceeding that goes to trial, warnings regarding the pitfalls of proceeding without counsel must be rigorously conveyed.  *See Patterson v. Illinois*, 487 U.S. 285, 299 (1988).

The issue of whether a waiver of the right to counsel is knowing, voluntary, and intelligent is a mixed question of law and fact.  *See Strozier v. Newsome*, 926 F.2d 1100, 1104 (11th Cir. 1991).  Finally, Petitioner bears the burden of proving that he did not competently and intelligently waive his right to the assistance of counsel.  *See Tovar*, 541 U.S. at 92.

Although Petitioner's Reply is repetitive, and for the most part a recitation of case law, the Court finds Petitioner is claiming that the waiver of his right to counsel at the December 8, 2006 hearing was involuntary because he had a conflict with counsel who had terminated his psychologist without consulting him.  Petitioner also contends that the trial court should have given the *Arguello* advisement again rather than taking notice that the advisement had been given  six months prior to the December 8 hearing.

The Court has reviewed the hearing transcripts from the July 26, 2006 hearing, specifically the portion that contains the trial court's *Arguello* Advisement to Petitioner, July 26, 2006 Hr'g (CD Lamar Tr., #26 at 17-36), the file records, that include both Petitioner's motion

29

to proceed *pro se* and counsel's motion to withdraw, *see* CD Lamar File at 302-03[6] and 316-17, and the transcripts for the December 8, 2006 hearing, CD Lamar Tr., #16.  The Court has found the following.

The trial court discussed with great detail the requirements and possible disadvantages of self-representation.  In particular, the trial court emphasized to Petitioner that disputes with an attorney must be balanced with the disadvantages of proceeding *pro se*.  CD Lamar Tr. #26 at 30.  The trial court also reminded Petitioner during the advisement that he had previously elected to remove two attorneys due to conflicts.  *Id.*  Petitioner responded that he understood the potential for disaster in representing himself, that his conflict with the two attorneys was not superficial, and that both of the attorneys would not explore certain issues.  *Id.* at 31.  The Court further notes that a discussion regarding the NGRI plea issue followed the advisement.  The prosecution and the court stated that if the NGRI plea was the basis of the conflict Petitioner is able to enter the plea over the objection of counsel and counsel is required to support the defense.  *Id.* at 37-40.  Petitioner did not disagree that the NGRI plea was the source of the conflict.  Petitioner also was instructed that he did not have to be represented to enter the plea and that he can decide to withdraw the plea after a court-ordered evaluation is conducted.  *Id.* at 39-40.

For the following reasons, the Court concludes that Petitioner's decision, on December 8, 2006, to waive his right to representation and proceed *pro se* was made voluntarily, intelligently, and knowingly.

---

[6] Although the copy of Petitioner's motion to proceed *pro se* is undecipherable for the most part, it is clear from Petitioner's statements in his Motion for Summary Judgment, ECF #27 at 2, that he elected to proceed *pro se*, because counsel had acted in an improper and unethical manner that culminated in a conflict.

First, the advisement given on July 26, 2006, was very thorough and there is nothing to suggest that the Petitioner did not remember the details of the advisement, especially since he had received a written copy of the advisement.

Second, based upon the particular facts and circumstances surrounding this case, including the background, experience, and conduct of the accused, a second advisement was not necessary.  Petitioner gave no indication at the December 8 hearing that he was unclear about the intricacies of proceeding *pro se*.  He acknowledged the advisement he was given on July 26 and without hesitation stated he desired to proceed *pro se*.  Dec. 8, 2006 Hr'g (CD Lamar Tr., #16 at 2-3).  He even appeared anxious to proceed with filing new motions.  *Id.* at 5.  Petitioner also acknowledged a propensity to create conflict with counsel and the graciousness of the court to assist him with the appointment of at least three different attorneys.  *Id.* at 4.  Petitioner conceded that the conflict with his third counsel was based on counsel's disagreement about raising certain issues and that he and counsel discussed these issues ad nauseam.  *Id.*

Finally, Petitioner stated the source of the conflict with his third attorney and admitted that the conflict had been the same with his other two attorneys in that they did not want to raise certain issues.  *Id.* at 5.  Petitioner also told the court at the July 26, 2006 hearing that his conflict with the two attorneys was not superficial, and that both of the attorneys would not explore certain issues.  The Court, therefore, finds that considering Petitioner's statements at both the December 8 and the July 26 hearings, the trial court had properly inquired and recorded the source of the conflict.  Petitioner, therefore, has failed to rebut the presumption that state court's factual determinations are correct by clear and convincing evidence.

The CCA decision regarding Petitioner's involuntary waiver of counsel claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  This claim lacks merit and will be dismissed.

## V.  Conclusion

For the foregoing reasons, the Petition for Writ of Habeas Corpus (including #1 and #12) is **DENIED**.  The Court has *sua sponte* considered whether any of Petitioner's contentions warrant the issuance of a Certificate of Appealability pursuant to 28 U.S.C. § 2253(a).  Having considered the standards of *Slack v. McDaniel,* 529 U.S. 473, 484 (2000), the Court finds that Petitioner has not made a substantial showing of the denial of a constitutional right such that reasonable jurists could disagree as to the disposition of his petition. 28 U.S.C. § 2253(c)(2). Accordingly, the Court  denies a Certificate of Appealability.

The Court also *sua sponte* certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order is not taken in good faith, and, therefore, *in forma pauperis* status will be denied for the purpose of appeal.  *See Coppedge v. United States*, 369 U.S. 438 (1962).  If Petitioner files a notice of appeal he must also pay the full $455.00 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

The Motion and Affidavit in Support of Summary Judgment on Habeas Claim Two Fed. R. Civ. P. 56, ECF #27, and the Motion to Obtain Response to Motion for Summary Judgment on Claim Two Pursuant to D.C.COLO.L.Civ.R. 56.1, ECF #29, are **DENIED** as moot.

Dated this 13th day of May, 2013

**BY THE COURT:**

_Marcia S. Krieger_

Marcia S. Krieger
Chief United States District Judge